# Illinois Official Reports

## Appellate Court

---

### *People v. Lawson*, 2018 IL App (4th) 170105

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KATIE LAWSON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-17-0105 |
| Filed | March 16, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 12-CF-593; the Hon. J. Casey Costigan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Allen H. Andrews, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion.<br>Presiding Justice Harris and Justice DeArmond concurred in the judgment and opinion. |

**OPINION**

¶ 1    In July 2012, a grand jury indicted defendant, Katie Lawson, on single counts of aggravated driving under the influence of alcohol (count I) (625 ILCS 5/11-501(d)(1)(F) (West 2010)), failure to report an accident involving death (count II) (*id.* § 11-401(b)), and failure to report an accident involving personal injury (count III) (*id.*). In September 2012, a grand jury indicted defendant on three additional counts of aggravated driving under the influence "of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof" (counts IV, V, and VI) (*id.* § 11-501(d)(1)(F)). Defendant also received six traffic citations (counts VII to XII), including four for driving under the influence (*id.* § 11-501(a)(1), (a)(2), (a)(5), (a)(6)), one for driving while license suspended (*id.* § 6-303(a)), and one for failure to reduce speed to avoid an accident (the record on appeal does not contain a copy of this citation).

¶ 2    In November 2013, defendant entered an open plea to counts I and IV through XII. After a bench trial, the trial court found defendant guilty of counts II and III. In January 2014, the court sentenced defendant to consecutive prison terms of eight years for aggravated driving under the influence of alcohol (count I) and four years for failing to report an accident involving death (count II). In September 2014, the court denied defendant's motion to reconsider sentence, and defendant appealed. In August 2016, this court remanded the case for a corrected certificate under Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013). In December 2016, defense counsel filed a Rule 604(d) certificate and an "Amended Motion to Reduce Sentence." In January 2017, the trial court denied the amended motion.

¶ 3    Defendant appeals, asserting the trial court erred in denying her request for probation. We affirm.

## I. BACKGROUND

¶ 4

¶ 5    All of the charges in this case relate to defendant's actions on June 24, 2012. In November 2013, the trial court held defendant's plea hearing, wherein defendant agreed to enter an open plea to counts I and IV through XII. In its factual basis, the State indicated that, on the date in question, defendant drove on a suspended license a "silver Nissan" around 1:30 a.m., after consuming alcohol that evening. An accident reconstructionist would testify defendant approached the intersection of Washington and Main Streets, in Bloomington, Illinois, at a speed of 47 miles per hour. Due to her intoxication, defendant struck Lauren Leffler and Nicholas Jefferson as they walked across the intersection. Defendant did not stop her vehicle at the scene of the accident and failed to report she was in an accident to law enforcement officials. Leffler died as a result of the injuries she suffered after being struck by defendant's vehicle. Testing revealed defendant's blood alcohol concentration to be 0.265 and also indicated the presence of tetrahydrocannabinol (THC), or cannabis.

¶ 6    Following the State's factual basis, defendant pleaded guilty to counts I and IV through XII. The trial court found the plea was knowingly and voluntarily made. The court then proceeded to a bench trial on the two remaining charges, failure to report an accident involving death (count II) and failure to report an accident involving personal injury (count III). Defendant admitted in an interview following the accident she did not call the police. However, she argued that the statute provided an exception to reporting the accident "as soon as possible but in no case later than one-half hour after such motor vehicle accident." See 625

ILCS 5/11-401(b) (West 2010). Defendant argued, following the accident, she was "hysterical" and unable to "form a coherent thought" and, thus, "incapacitated from reporting" (see *id.*). After hearing the evidence and the parties' arguments, the court concluded that defendant "was of the mindset to realize that an accident had occurred on the night in question, and that she was capable of calling the police and it was not done." The court found defendant guilty of counts II and III.

¶ 7    In January 2014, the trial court conducted the sentencing hearing. Defendant presented the testimony of Dr. Hwan Jeong, a medical doctor board certified in hematology. After defendant's arrest, Dr. Jeong diagnosed defendant with immune thrombocytopenic purpura (ITP). Dr. Jeong testified ITP is a blood disorder in which the immune system destroys platelets. As a result, people with ITP develop low platelet counts. Dr. Jeong characterized defendant's circumstances as "very dangerous." According to Dr. Jeong, defendant required "appropriate care," including "a transfusion regimen, or a weekly visit to the doctor's office." Defendant received replacement therapy when her weekly blood draw showed a low platelet count, usually every four to five weeks. Replacement therapy was administered intravenously by a nurse in a doctor's office or hospital. Dr. Jeong believed it would be in defendant's best interest medically to remain under his care in the community and not be incarcerated. The trial court confirmed a platelet draw involved the same procedure as a blood draw.

¶ 8    The State presented the testimony of Jeanene Payne, the medical supervisor for the McLean County detention facility. Payne testified she is familiar with defendant's medical needs and contacted the Illinois Department of Corrections (Department) regarding defendant's medical condition. The medical director for the Department assured Payne that the Department "had offenders with the particular situation that [defendant] has in the past and cared for them without a problem."

¶ 9    The State recommended a sentence of 12 years in prison for aggravated driving under the influence of alcohol (count I), a sentence of 9 years in prison for failure to report an accident involving death (count II), and a sentence of 364 days in jail for driving while license suspended (count XI). Defendant requested probation, characterizing her "extreme chronic and serious medical condition" as "extraordinary circumstances" requiring probation.

¶ 10   In mitigation, the trial court considered defendant's lack of a prior felony conviction and hardship on her children. It also considered defendant's "medical condition" and remorse. In aggravation, the court considered the many "shattered lives" left in the wake of defendant's "reckless conduct" and defendant's failure to stop after hitting Leffler and Jefferson. The court also considered defendant "continually lied" to law enforcement officers after she was arrested, causing "additional work" for officers. The court noted the need to deter others from committing similar crimes.

¶ 11   The trial court stated that a sentence of probation would deprecate the seriousness of defendant's conduct and no extraordinary circumstances warranted probation "even with [defendant's] medical condition." The court sentenced defendant to eight years in prison for aggravated driving under the influence of alcohol (count I), four years in prison for failure to report an accident involving death (count II), and a sentence of "court costs plus conviction" for driving while license suspended (count XI). The court found the remaining counts merged with counts I and II and defendant's sentences were "mandatory consecutive."

¶ 12   Following the sentencing hearing, defendant filed a motion to reconsider her sentence. Defendant argued her sentence was excessive and the trial court did not properly consider

factors in aggravation and mitigation, including "the severity of [d]efendant's medical condition" as "extraordinary circumstances" requiring a sentence of probation. In September 2014, the trial court conducted a hearing on defendant's motion. Dr. Jeong testified he had treated defendant for approximately six months. He received, "most of the time," defendant's weekly blood test results from the prison. Dr. Jeong treats defendant in his office once every three or four weeks. Defendant complained of "sleeping problems and body ache and headache." Dr. Jeong prescribed medication for defendant but she did not always receive the medication because it was not "approved" by the Department. Defendant does receive the medication for her blood disorder and it "has been very effective." Dr. Jeong has consulted by telephone with Dr. Steve Kottemann, a Department medical doctor, two or three times regarding defendant's care. In Dr. Jeong's opinion, defendant's medical condition was stable.

¶ 13    Dr. Kottemann testified that he is a physician with the Department. He began providing defendant's medical care in January 2014. He recommended defendant be placed in the infirmary "because occasionally, fights do break out, and I was concerned if she had a low platelet count and got injured, she could have extensive bruising or bleeding." He is also able to provide greater oversight of defendant's medical care with defendant's placement in the infirmary. Dr. Kottemann testified that he has consulted with Dr. Jeong on approximately three occasions. He follows Dr. Jeong's recommendations for the treatment of defendant's blood disorder, stating "[Dr. Jeong] manages that completely." He agreed with Dr. Jeong that defendant's medical condition had "remained the same."

¶ 14    The trial court denied defendant's motion to reconsider her sentence, confirming its earlier finding of no extraordinary circumstances requiring a sentence of probation. The court noted defendant's condition was stable, Drs. Jeong and Kottemann had worked together to provide defendant the appropriate medical care, and defendant's placement in the infirmary provided continuous oversight by nursing staff.

¶ 15    Defendant appealed, and upon the parties' agreed motion, this court remanded the cause for a new proceeding in strict compliance with Illinois Supreme Court Rule 604(d) (eff. Dec. 11, 2014). *People v. Lawson*, No. 4-14-0905 (2016) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 16    On remand, defense counsel filed a Rule 604(d) certificate and an "Amended Motion to Reduce Sentence." Defendant argued that her "severe and unusual medical condition" and "the presumption for probation where there is no significant criminal history" were "extenuating circumstances" warranting probation. The amended motion stated defendant had been diagnosed with a new medical condition, "Chiari I Malformation." The costs for the "IVC treatment" alone had exceeded $2.5 million.

¶ 17    In January 2017, the trial court conducted a hearing on the amended motion to reduce defendant's sentence. Dr. Jeong testified he continued to treat defendant's blood disorder. Defendant received "medicine" twice each month and was treated in Dr. Jeong's office once each month. Dr. Jeong confirmed he received a note from a consultant stating defendant had been diagnosed with Chiari malformation, an "anatomic malform structure in the brain." Dr. Jeong did not think the new diagnosis was related to defendant's blood disorder. The new diagnosis was not his specialty. Dr. Jeong testified defendant's condition remained stable.

¶ 18    Lisa Marie Johnson testified she is the health care unit administrator at Logan Correctional Center. Defendant resides in the correctional center's infirmary. She may go to the visiting area or the law library. Jamie Barker testified she is defendant's mother. Barker secured copies

of defendant's medical records and completed a "cost analysis" of defendant's medical expenses. With two months of bills missing, the expenses for defendant's treatment totaled $2,588,355.20 at the time of hearing, January 2017. Each two-day platelet infusion costs approximately $100,000.

¶ 19   Defendant testified that, because of her blood disorder, she is housed in the medical unit. She has limited contact with the general prison population. Defendant confirmed she goes to the visiting area of the prison and law library but has few opportunities for recreation.

¶ 20   At the conclusion of the hearing, the trial court stated it considered "the totality of the circumstances," "reread the sentencing hearing," and "reconsidered the evidence." The court concluded "the sentence that was issued was a fair and appropriate sentence."

¶ 21   This appeal followed.

¶ 22                                        II. ANALYSIS

¶ 23   Defendant first argues the trial court abused its discretion in sentencing her for aggravated driving under the influence of alcohol where it failed to find extraordinary circumstances existed, requiring she receive a sentence of probation. As relief, defendant requests this court reduce her sentence to a term of probation. Alternatively, defendant requests this court vacate the sentence of imprisonment and remand the cause to the trial court with directions to grant defendant probation.

¶ 24   Citing *People v. Bolyard*, 61 Ill. 2d 583, 338 N.E.2d 168 (1975), the State asserts Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967) does not grant this court authority to reduce a sentence of imprisonment to a sentence of probation. We agree.

¶ 25   Our supreme court has twice stated we categorically do *not* have the authority to reduce a prison sentence to a sentence of probation. See *Bolyard*, 61 Ill. 2d at 588 ("Rule 615 does not grant a reviewing court the authority to reduce a sentence of imprisonment to a sentence of probation."); *People ex rel. Ward v. Moran*, 54 Ill. 2d 552, 556, 301 N.E.2d 300, 302 (1973) ("Supreme Court Rule 615 was not intended to grant a court of review the authority to reduce a penitentiary sentence to probation."). Similarly, we do not have authority to remand a cause with directions to grant probation. See *People v. Rege*, 64 Ill. 2d 473, 482, 356 N.E.2d 537, 541 (1976) ("[T]he appellate court erred in remanding the cause with directions to grant probation."). To the extent any prior decisions of this court hold to the contrary, they are not to be followed.

¶ 26   Even if we did have such authority, we would be disinclined to use it in this case. A reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court (*People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010)), which we do not find here.

¶ 27   Defendant pleaded guilty to aggravated driving under the influence of alcohol under section 11-501(d)(1)(F) of the Illinois Vehicle Code (625 ILCS 5/11-501(d)(1)(F) (West 2010)). Section 11-501(d)(2)(G) of the Vehicle Code (*id.* § 11-501(d)(2)(G)) provides a violation of section 11-501(d)(1)(F) "is a Class 2 felony, for which the defendant, unless the court determines that extraordinary circumstances exist and require probation, shall be sentenced to: (i) a term of imprisonment of not less than 3 years and not more than 14 years if the violation resulted in the death of one person." The plain language of the statute creates the presumption a convicted defendant shall serve a term of imprisonment. *Id.*; see also *People v.*

*Vasquez*, 2012 IL App (2d) 101132, ¶ 64, 971 N.E.2d 38. However, a trial court may override this presumption when it determines, in its discretion, that "extraordinary circumstances" require probation. *Id.* The legislature intended for the "extraordinary circumstances" language to limit the discretion of a trial court to impose a sentence of probation. See *People v. Winningham*, 391 Ill. App. 3d 476, 483, 909 N.E.2d 363, 369 (2009).

¶ 28    Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341. An abuse of discretion will not be found unless the court's sentencing decision is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *People v. Ramos*, 353 Ill. App. 3d 133, 137, 817 N.E.2d 1110, 1115 (2004). Also, an abuse of discretion will be found "where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000)). A trial court's sentencing decision is entitled to great deference, and we may not substitute our judgment for the trial court's merely because we might have weighed the sentencing factors differently. *Id.* at 212-13. In the instant case, we cannot conclude the trial court abused its discretion.

¶ 29    We agree with the trial court that defendant's medical condition did not rise to the level of "extraordinary circumstances" as envisioned by the legislature to justify a sentence of probation. Although the legislature did not define the precise boundaries of "extraordinary circumstances," it intended a trial court to exercise its discretion to override the presumption of incarceration only in limited circumstances. See *Vasquez*, 2012 IL App (2d) 101132, ¶ 64. In the present case, Dr. Jeong continued to provide treatment for defendant's blood disorder in cooperation with the Department's medical staff. Defendant received replacement therapy two days each month and was seen by Dr. Jeong in his office once each month. In April 2014, and again in January 2017, Dr. Jeong opined defendant's medical condition was stable.

¶ 30    As the trial court noted, defendant's access to nurses while residing in the infirmary provides even greater medical "supervision" than what defendant would be provided if given a "community[-]based sentence." We also agree with the court that a sentence of probation would deprecate the seriousness of the offense.

¶ 31    The trial court explicitly addressed the factors in mitigation and aggravation, and concluded a sentence of eight years in prison would have a deterrent effect. As the court stated, "this accident was 100 percent preventable." We find the trial court's sentence was not an abuse of discretion.

¶ 32    Defendant next argues her four-year sentence for failure to report an accident involving death was excessive in light of substantial mitigating factors, including her compliance with the terms of her bond conditions while awaiting sentencing, the absence of a significant criminal record, defendant's remorse, and the impact defendant's incarceration has on her two young children. Defendant requests this court reduce her sentence to a term of probation or vacate the sentence of imprisonment and remand the cause to the trial court with directions to grant defendant probation. As discussed above, we do not have the authority to reduce a prison sentence to a sentence of probation (see *Bolyard*, 61 Ill. 2d at 588; *Moran*, 54 Ill. 2d at 556), nor do we have the authority to remand a cause with directions to grant probation (see *Rege*, 64 Ill. 2d at 482). Moreover, we find no abuse of discretion.

¶ 33    The Illinois Constitution mandates "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful

citizenship." Ill. Const. 1970, art. I, § 11. " 'In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed.' " *People v. Hestand*, 362 Ill. App. 3d 272, 281, 838 N.E.2d 318, 326 (2005) (quoting *People v. Hernandez*, 319 Ill. App. 3d 520, 529, 745 N.E.2d 673, 681 (2001)). "A reviewing court gives substantial deference to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656.

¶ 34       Section 11-401(a) of the Vehicle Code provides:

> "The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11-403 have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary." 625 ILCS 5/11-401(a) (West 2010).

Violation of this section is a Class 4 felony, punishable by one to three years in prison. *Id.* § 11-401(c); 730 ILCS 5/5-4.5-45(a) (West 2010).

¶ 35       Section 11-401(b) of the Vehicle Code provides:

> "Any person who has failed to stop or to comply with the requirements of paragraph (a) shall, as soon as possible but in no case later than one-half hour after such motor vehicle accident, or, if hospitalized and incapacitated from reporting at any time during such period, as soon as possible but in no case later than one-half hour after being discharged from the hospital, report the place of the accident, the date, the approximate time, the driver's name and address, the registration number of the vehicle driven, and the names of all other occupants of such vehicle, at a police station or sheriff's office near the place where such accident occurred. No report made as required under this paragraph shall be used, directly or indirectly, as a basis for the prosecution of any violation of paragraph (a)." 625 ILCS 5/11-401(b) (West 2010).

Violation of this section is a Class 2 felony punishable by three to seven years in prison. *Id.* § 11-401(d); 730 ILCS 5/5-4.5-35(a) (West 2010). But if, as here, the accident results in a death, the offense is enhanced to a Class 1 felony punishable by 4 to 15 years in prison. 625 ILCS 5/11-401(d) (West 2010); 730 ILCS 5/5-4.5-30(a) (West 2010). Failing to report the required information within one-half hour is a required element of the offense. *People v. Moreno*, 2015 IL App (2d) 130581, ¶ 23, 40 N.E.3d 241. As the trial court's sentence of four years in prison was within the relevant sentencing range, we will not disturb the sentence absent an abuse of discretion.

¶ 36       Defendant argues the trial court abused its discretion in sentencing her by failing to appropriately consider that (1) defendant failed to report the accident not because she was attempting to escape the consequences of her actions but because she panicked and (2) she complied with the terms of her bond conditions while awaiting sentencing. Defendant argues "while the facts of the crime are certainly aggravating, much mitigation is present" and, therefore, the court abused its discretion when it sentenced defendant to prison rather than probation. Defendant notes the absence of a significant criminal record; the impact defendant's incarceration has on her two young children; and defendant's youth, remorse, and health.

- 7 -

¶ 37    We find the sentence imposed on defendant by the trial court was not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. The trial court indicated it had considered the presentence report, the evidence in mitigation, defendant's statement in allocution, and the statutory factors in mitigation and aggravation. The court found a sentence of probation would deprecate the serious nature of the offense and be inconsistent with the ends of justice. We hold the court did not abuse its discretion in sentencing defendant to four years in prison for her failure to report an accident involving death.

¶ 38                                    III. CONCLUSION

¶ 39    For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 40    Affirmed.