NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220769-U

NO. 4-22-0769

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 28, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Stephenson County |
| DREW J. OTTENHAUSEN, | ) | No. 21TR3987 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James M. Hauser, |
| | ) | Judge Presiding. |

---

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The appellate court granted the Office of the State Appellate Defender's motion to withdraw as counsel as no meritorious issues could be raised on appeal.

¶ 2     In August 2022, defendant, Drew J. Ottenhausen, was convicted of driving while license revoked (625 ILCS 5/6-303(a) (West 2020)) and sentenced to 12 months of conditional discharge with 30 days in jail. Defendant timely appealed and the Office of the State Appellate Defender (OSAD) was appointed to represent him. OSAD now moves to withdraw its representation of defendant pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending "an appeal in this case would be frivolous." We agree and grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 3                                     I. BACKGROUND

¶ 4         On October 18, 2021, the State charged defendant with driving while his license was revoked (625 ILCS 5/6-303(a) (West 2020)). In May 2022, defense counsel stated defendant wished to waive his right to a jury trial. Before accepting defendant's waiver, the trial court admonished defendant as to the pending charge and possible penalty range. The court also advised defendant of his right to a jury trial, the jury trial process, and the bench trial process. Defendant acknowledged his understanding of the court's admonishments and explanations. Finally, upon the court's inquiry, defendant affirmatively stated there were no threats or promises made to him in exchange for his jury waiver. After this colloquy, the court found defendant's waiver of jury to be "knowing and voluntary" and accepted his signed jury waiver.

¶ 5         At defendant's bench trial, the State called two witnesses: Trisha Haag and Andy Schroeder. In addition, the State introduced, and the court admitted, a certified driving abstract showing defendant's license was revoked on October 18, 2021, for driving under the influence.

¶ 6         Haag worked at the Boco convenience store in Pearl City in October 2021. While working as the store clerk on October 18, she looked out the window and saw defendant pull into the parking lot. Defendant then exited the vehicle, came into the store, and purchased beer. When defendant left the store, he saw a police officer outside. After seeing the officer, he began walking in the opposite direction and did not return to his vehicle. On cross-examination, Haag stated she was familiar with defendant and that the two were friends.

¶ 7         Schroeder was working as a police officer for the Village of Pearl City Police Department on October 18, 2021. That day, he patrolled Goldmine Road, a street known for complaints of "junked" vehicles and noticed a parked "Chevy truck" in a similar condition. He ran the license plates to determine whether the vehicle was properly registered and determined defendant was the registered owner. Schroeder utilized his in-car computer to run a check on

defendant and learned defendant's license was revoked. Approximately two hours later, Schroeder observed a "greenish blue Chevy Astro minivan" in the Boco parking lot. He recognized this van as "belong[ing] to" defendant's address. Schroeder parked next to the vehicle in the Boco parking lot and observed an individual he recognized as defendant exit the store. Defendant looked at Schroeder and immediately walked away from the store. After defendant walked away, Schroeder went inside and asked the store clerk, Haag, whether defendant was the person driving the minivan. Haag confirmed he was. Schroeder located defendant and spoke with him about the minivan. Defendant initially denied driving it, but after Schroeder informed defendant he would request the surveillance video, defendant admitted to driving. On cross-examination, Schroeder admitted he never obtained the surveillance video and never observed defendant driving the minivan.

¶ 8        Defendant testified on his own behalf. He flatly denied driving the minivan to Boco and denied telling Schroeder he was driving. On cross-examination, he acknowledged that Haag knew him but contended she also knew his three brothers, who "look just like [him]."

¶ 9        The trial court found defendant guilty of driving while license revoked, noting that it found Haag more credible than defendant. The parties proceeded immediately to sentencing and neither party presented any evidence. The State requested the court sentence defendant to 10 days in jail and impose $560 in fines and costs. Defense counsel requested 12 months of conditional discharge and 240 hours of public service work, leaving the fines and costs to the court's discretion. Defendant declined to make a statement of allocution. The court sentenced defendant to 12 months of conditional discharge with 30 days in jail and imposed a $200 fine, plus costs.

¶ 10        Defense counsel filed a motion for a new trial, arguing that "the verdict is contrary to the law and to the evidence" and "the State did not prove the guilt of Defendant beyond a reasonable doubt." At a hearing on the motion, defense counsel stood on his written motion. The

trial court denied the motion and reiterated that it found "the State's witnesses credible" and defendant's testimony "incredible."

¶ 11 Defendant timely filed a notice of appeal and this court appointed OSAD to represent him. OSAD filed a motion to withdraw and supported its motion with a memorandum of law, including a statement of facts, a list of potential issues, and arguments why those issues lack arguable merit. OSAD provided proof of service of its motion and memorandum on defendant, and we granted defendant the opportunity to respond. Defendant failed to respond.

¶ 12                                                II. ANALYSIS

¶ 13 OSAD moves to withdraw, asserting all defendant's potential claims lack arguable merit. Counsel considered defendant's possible claims of whether (1) the State presented sufficient evidence to prove his guilt beyond a reasonable doubt, (2) defendant's jury waiver was proper, and (3) the trial court committed error at sentencing. After examining the record, the motion to withdraw, and the memorandum of law, we agree with OSAD that defendant's potential claims lack arguable merit.

¶ 14                                    A. Sufficiency of the Evidence

¶ 15 OSAD contends no meritorious argument can be made that the State failed to prove defendant's guilt beyond a reasonable doubt. We agree.

¶ 16 When faced with a challenge as to whether the State has failed to prove a defendant's guilt beyond a reasonable doubt, " 'a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. McKown*, 2021 IL App (4th) 190660, ¶ 49, 180 N.E.3d 909 (quoting *People v. Harris*, 2018 IL 121932, ¶ 26, 120 N.E.3d 900). In a criminal case, it is well-settled that the State must "prov[e] each element of

a charged offense beyond a reasonable doubt." *People v. Murray*, 2019 IL 123289, ¶ 28, 155 N.E.3d 412. "The trier of fact determines the credibility of the witnesses, decides what weight to give their testimony, resolves conflicts in the evidence, and draws reasonable inferences from that evidence." *People v. Swenson*, 2020 IL 124688, ¶ 36, 181 N.E.3d 116. As a reviewing court, we will not substitute our judgment for the trial court "unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt." *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989).

¶ 17    In order to convict a defendant for driving while license revoked, the State must establish that the defendant was "driv[ing] or [was] in actual physical control of a motor vehicle on any highway of [the State of Illinois] at a time when [his or her] driver's license, permit, or privilege to do so *** is revoked or suspended." 625 ILCS 5/6-303(a) (West 2020).

¶ 18    At defendant's bench trial, Haag, the Boco store clerk and a friend of defendant, testified. Specifically, Haag testified she saw defendant drive to Boco, exit his vehicle, come inside, and purchase beer on October 18, 2021. Schroeder testified that while he never observed defendant driving on October 18, he located defendant's vehicle at Boco, saw defendant exit the store, and observed defendant immediately turn in the opposite direction after he saw Schroeder. Subsequently, Schroeder asked Haag whether she saw defendant drive his vehicle to Boco, and Haag confirmed she had. Schroeder located defendant, and he ultimately admitted to driving, even though his license was suspended. The State introduced a certified copy of defendant's driving abstract, showing that defendant's license was suspended on October 18, 2021, which the court admitted. Defendant denied driving on October 18 or admitting to Schroeder that he was driving that day.

¶ 19        In this case, witness credibility was the determining factor for the trial court. The court specifically noted it found Haag's testimony more credible than defendant's testimony. Consequently, it found defendant guilty of driving while license revoked. We find nothing in the record to undermine the court's credibility determination. While defendant denied driving that day, defendant had an incentive to lie—to potentially avoid a conviction. Conversely, there appears to be no motive for Haag to lie about what she observed on October 18, 2021. Therefore, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the State proved each element of driving while license revoked beyond a reasonable doubt.

¶ 20                                B. Jury Waiver

¶ 21        OSAD asserts there is no meritorious argument that defendant's waiver of a jury trial was improper. We agree.

¶ 22        While a defendant has an absolute right to a trial by jury, a defendant may also choose to waive that right. *People v. Owens*, 386 Ill. App. 3d 765, 771, 899 N.E.2d 625, 631 (2008). We review *de novo* whether a defendant properly waived his right to a jury trial. *People v. May*, 2021 IL App (4th) 190893, ¶ 44, 194 N.E.3d 1027. There is no precise formula for us to utilize during this review; instead it " 'depends on the facts and circumstances of each particular case.' " *Id*. (quoting *People v. Bannister*, 232 Ill. 2d 52, 66, 902 N.E.2d 571, 581 (2008)). Although there may not be a precise formula, we must determine that defendant understood " 'that the facts of [his] case will be determined by a judge and not a jury.' " *Id*. ¶ 46 (quoting *Bannister*, 232 Ill. 2d at 69).

¶ 23        In this case, defendant waived his right to a jury trial in open court, while represented by counsel. The trial court had an extended colloquy with defendant in which it explained the nature of the charge, possible penalties, and the difference between a jury trial and

a bench trial. After this, the court inquired whether any threats or promises were made in exchange for defendant's jury waiver. Defendant affirmatively stated he understood the court's explanations and that no threats or promises were made to him. He then signed a written jury waiver, which was accepted by the court. The record is devoid of any indication defendant misunderstood or questioned the jury waiver. It is clear defendant made a knowing and voluntarily waiver of his right to a jury trial.

¶ 24                                    C. Sentencing Errors

¶ 25            OSAD asserts any argument the trial court erred while sentencing defendant is deemed waived because defendant failed to file a written motion to reconsider his sentence. Alternatively, OSAD claims that even if the issue is not waived, any argument attempting to challenge defendant's sentence would be frivolous. We agree.

¶ 26            After defendant's sentencing, the trial court admonished him as to his appeal rights pursuant to Illinois Supreme Court Rule 605(a) (eff. Oct. 1, 2001). The court specifically stated:

> "If you desire to challenge any part of the sentence or the sentencing hearing, you must file prior to the appeal a motion to reconsider the sentence or any challenge to the sentencing hearing, within 30 days of today. The motion must be in writing and must set forth all of the issues or claims about the sentence or sentencing hearing.
>
> ***
>
> Any issue or claim of error about the sentence imposed or any part of the sentencing hearing you fail to raise in the written motion will not be considered by the appellate court."

Defendant, through his counsel, filed a motion for a new trial rather than a motion challenging his sentence. The motion for a new trial failed to include any claims of error regarding defendant's

sentence or the sentencing hearing. Consequently, any arguments challenging defendant's sentence or the sentencing hearing have been waived. *Id.*

¶ 27 Even assuming, *arguendo*, defendant's challenge to his sentence is not waived, we agree with OSAD that any argument challenging his sentence would be frivolous. Illinois courts have determined "[a] reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court." *People v. Lawson*, 2018 IL App (4th) 170105, ¶ 26, 102 N.E.3d 761. On review, "[a] sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000)).

¶ 28 Driving while license revoked, a Class A misdemeanor, carries a possible sentencing range of up to 364 days in jail or up to 2 years of probation or conditional discharge. 730 ILCS 5/5-4.5-55 (West 2020). Additionally, there is a specific requirement that a defendant convicted of driving while license revoked serve either 10 days in jail with no day-for-day credit or perform 30 days' worth of community service hours. 625 ILCS 5/6-303(c)(1) (West 2020).

¶ 29 The trial court sentenced defendant to 12 months of conditional discharge with 30 days in jail. Defendant was eligible for day-for-day credit on the jail sentence. See 730 ILCS 130/3 (West 2020). This sentence was well below the maximum possible penalty. There is nothing in the record to indicate the court abused its discretion when sentencing defendant.

¶ 30 III. CONCLUSION

¶ 31 For the reasons stated, we grant OSAD's motion to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 32 Affirmed.